UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| **MICHELLE REGINA MORTON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**MONSTER RESERVATIONS GROUP, LLC,** a South Carolina company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michelle Regina Morton ("Plaintiff Morton" or "Morton") brings this Class Action Complaint and Demand for Jury Trial against Defendant Monster Reservations Group, LLC, ("Defendant" or "Monster Reservations Group") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Morton, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## PARTIES

1. Plaintiff Morton is a resident of Wake Forest, North Carolina.

2. Defendant Monster Reservations Group is a company registered in South Carolina, with its headquarters located in Myrtle Beach, South Carolina. Defendant Monster Reservations Group conducts business throughout this District and throughout the US, including North Carolina.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in September 2023 alone, at a rate of 142.4 million per day. www.robocallindex.com (last visited October 29, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant Monster Reservations Group sells vacation packages to consumers throughout the US.[3]

14. Defendant Monster Reservations Group places telemarketing calls to solicit sales of its vacation packages to consumers.

15. In addition, Monster Reservations Group works with third-party telemarketing companies who generate leads on its behalf.

16. Upon information and belief, Monster Reservations Group pays for each lead it receives from third-party telemarketing companies.

17. The Federal Communication Commission has instructed that companies such as Monster Reservations Group may not avoid liability by outsourcing their telemarketing for them:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://monsterrg.com/

4

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

18. Neither Plaintiff nor the members of the proposed Classes ever provided the Defendant and/or its agents with prior express written consent to receive the telephone calls at issue. Monster Reservations Group does not have any record of express written consent to place telemarketing calls, to Plaintiff or to members of the proposed Classes.

19. To make matters worse, Monster Reservations Group and its third-party agents continue to place unsolicited calls to consumers who have asked for the calls to stop, as per Plaintiff's experience.

20. Monster Reservations Group is liable for the TCPA violations of its third-party agents, which were committed within the scope of Monster Reservations Group's authority and with the knowledge and consent of Defendant.

21. Many consumers have posted complaints online about unsolicited calls that they received from or on behalf of Defendant Monster Reservations Group, including reports about consumers who received unsolicited calls after asking for the calls to stop, including:

- "***Company continues to call me even though Ive been asked to be placed on the do not call list***. I was threatened by a representative. Who said I can I have your address now and I know where you live. With intent to harm."[4] (emphasis added)

- "They contacted me when ive never heard of them talking about a credit to [cruises] when i dont like cruises they shouldnt have my contact number and shouldnt be calling me if they keep calling im filing for harassment. Below is screenshot of number ***constantly calling me***."[5] (emphasis added)

- "I have been receiving calls from Monster Reservation Group from various numbers at varying times throughout the day to include evening hours."[6]

- "Today 6/6, I received multiple phone calls from the telephone number *************. They were calling as a telemarketing scheme for "vacation packages" claiming I had a voucher or some other scam idea to get me interested in their product. I had to ask multiple times through multiple different agencies for the company name until finally a representative (who did not use their name) told me their company is Monster Reservations Group. My phone number is listed in the federal

---

[4] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192#bbbseal
[5] Id.
[6] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=3

6

do not call database, and their contacting me is a direct violation of the TCPA.I'm also filing a complaint with the ****"[7]

- "THE PERSON WHO CALLED ME WAS SO NASTY AFTER I ASKED TO BE PLACED ON DNC HE LAUGHED IN MY FACE - WOULD NOT GET ME A SUPERVISOR AND WOULD NOT TELL ME THE NAME OF THE BUSINESS"[8]

- "Unless you enjoy unsolicited call 4 or 5 times a week avoid this business like the plague! *You ask them to quit calling and leave you alone and they make sure to call you the next day.* I wish I had never bought a vacation package from Monster they are the most aggressive telemarketers I have ever encountered."[9] (emphasis added)

22. In response to these calls, Plaintiff Morton brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

---

[7] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/complaints?page=8

[8] https://www.bbb.org/us/sc/myrtle-beach/profile/travel-agency/monster-reservations-group-llc-0593-90038192/customer-reviews

[9] https://www.yelp.com/biz/monster-reservations-group-myrtle-beach?start=70&sort_by=date_desc&rr=1

7

## PLAINTIFF MORTON'S ALLEGATIONS

23. Plaintiff Morton registered her cell phone number on the DNC on July 31, 2012.

24. Plaintiff Morton uses her cell phone number for personal use only as one would use a landline telephone number in a home.

25. Plaintiff Morton does not use her cell phone number for any business-related purposes.

26. The calls that Plaintiff Morton received from or on behalf of Defendant Monster Reservations Group were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

27. On July 24, 2023, Plaintiff Morton began receiving unsolicited telemarketing calls soliciting a vacation package either from or on behalf of Defendant Monster Reservations Group.

28. The callers did not mention a company name when they called.

29. Plaintiff Morton asked the callers for more information about who they worked for, but in response, the callers would hang up.

30. Plaintiff Morton also asked the callers to stop calling multiple times, but the calls continued.

31. For example, on October 5, 2023, Plaintiff Morton received an unsolicited call to her cell phone from, or on behalf of Monster Reservations Group from 919-910-5471.

32. When Plaintiff Morton answered this call, an employee solicited the sale of a discounted vacation package, offering deals on resorts.

33. Plaintiff Morton asked for more information about the company that was calling her, but the employee hung up the phone.

34. When 919-910-5471 is called, an employee identifies the company name as "Travel Services" and then transfers the call to Monster Reservations Group.

35. Plaintiff Morton has never done business with Monster Reservations Group and its partner companies and has never given them consent to call her phone number.

36. The unauthorized solicitation telephone calls that Plaintiff Morton received from or on behalf of Defendant Monster Reservations Group have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

37. Seeking redress for these injuries, Plaintiff Morton, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

38. Plaintiff Morton brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Monster Reservations Group or an agent calling on its behalf called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant or its agents called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Monster Reservations Group or an agent calling on its behalf called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant or its agents called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

39. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally

10

adjudicated and/or released. Plaintiff Morton anticipates the need to amend the Class definition following appropriate discovery.

40. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant or an agent calling on its behalf placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant or an agent working on its behalf engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

42. **Adequate Representation**: Plaintiff Morton will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Morton has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Morton and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Morton nor her counsel have any interest adverse to the Classes.

43. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Morton. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's

misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Morton and the Do Not Call Registry Class)

44. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

46. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

47. Defendant or an agent working on its behalf violated 47 C.F.R. § 64.1200(c) by initiating or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Morton and the Do Not Call Registry Class

13

members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Morton and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

49. As a result of Defendant's conduct as alleged herein, Plaintiff Morton and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Morton and the Internal Do Not Call Class)**

51. Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference herein.

52. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

53. Defendant or an agent working on its behalf placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant or an agent working on its behalf to initiate telemarketing calls/text messages.

54. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

55. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of

16

Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Morton requests a jury trial.

Respectfully Submitted,

**MICHELLE REGINA MORTON**, individually and on behalf of all others similarly situated,

DATED this 3rd day of November, 2023.

<u>By: /s/ *Ryan Duffy*</u>
<u>Ryan Duffy\*</u>
**The Law Office of Ryan P. Duffy, PLLC**
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

Avi R. Kaufman
**KAUFMAN P.A**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\*Local counsel*